DOROTHY EDMONDS, ADM'X. *v.* LEONARD E. EDMONDS ET AL

5-5901                                    480 S.W. 2d 343

Opinion delivered May 22, 1972

*Patten, Brown & Leslie,* for appellants.

*Spitzberg, Mitchell & Hays,* by: *John P. Gill,* for appellees.

J. FRED JONES, Justice. Dorothy Edmonds is the widow of Marvin Edmonds deceased and is the administratrix of his estate. She brings this appeal from a decree of the Pulaski County Chancery Court inpressing a trust in favor of the creditors of D & M Construction Co. on the proceeds of life insurance on the life of Marvin Edmonds.

D & M Construction Co. was a partnership composed of Leonard Edmonds and his nephew Marvin. Prior to Marvin's death, they were engaged in the construction of residential and other buildings in Pulaski County and other sections of the state. As a part of their business they would purchase lots, build houses thereon, and then sell the finished house on the open market at a profit. Leonard figured the materials and cost, submitted bids in connection with contract ventures and supervised the actual construction. Marvin kept the office books and records. He arranged for financing, made out the payrolls, did the partnership banking and wrote all the checks on the company account.

In February, 1969, a lot was purchased in the Lakewood Addition to the City of North Little Rock and a down payment in the amount of $100 was made by check on the D & M Construction Co. A construction loan was obtained from the Arkansas Savings & Loan Association in the amount of $22,500 and the balance of the purchase price of the lot was paid out of the loan. Title to the lot was taken in the names of Marvin and his wife Dorothy, and they executed a note and mortgage on the lot as security for the loan. As additional security in connection with the loan, a declining term credit life insurance policy in the face amount of $22,500 was obtained on the life of Marvin and Arkansas Savings & Loan Association was the sole beneficiary. The initial premium for this insurance in the amount of $176.60 was paid out of the proceeds of the loan, and interest on the loan in the amount of $571.20 was subsequently paid by check on D & M Construction Co. The house was completed and sold to a third party purchaser. After the contract of sale was entered into but before the transaction was closed, the second annual insurance premium in the amount of $176.60 was paid by Arkansas Savings & Loan Association and this amount was added to the principal of the loan. When the sale was completed, the indebtedness to the loan association was paid and the profit in the amount of $4,662.21 was deposited to the bank account of D & M Construction Co. The insurance contract was continued in force on the life of Marvin Edmonds with the Arkansas Savings & Loan Association as beneficiary.

Marvin Edmonds died on December 7, 1970; the Arkansas Savings & Loan Association applied for and received the proceeds from the insurance policy and upon request, paid the proceeds over to the estate of the insured. At the time of Marvin's death, D & M Construction Co. had other construction projects in progress and owed labor and material bills in connection therewith. Leonard Edmonds, the surviving partner, instituted the present action for himself and the creditors of D & M Construction Co. alleging that the insurance on the life of Marvin was paid for with partnership funds and was obtained for the purpose of securing creditors of D & M Construction Co.; that the proceeds of the policy in the amount of

$20,961.38 were partnership assets and that Dorothy Edmonds, as administratrix, held such proceeds in trust for the benefit of the creditors of D & M Construction Co. He prayed that a constructive trust be impressed on the proceeds of the policy; that a receiver be appointed for D & M Construction Co. and that Dorothy be required to pay the proceeds of the insurance over to the receiver so that the insurance proceeds might be added to the other assets of the partnership for use in the payment of the creditors of D & M Construction Co.

Dorothy Edmonds, as administratrix, denied that the insurance proceeds were assets of the partnership but alleged that they were assets of the estate of Marvin Edmonds. She joined in requesting that a receiver be appointed for D & M Construction Co. and prayed for an accounting of the assets of the partnership, and prayed that the proceeds from the life insurance on the life of Marvin Edmonds be declared assets of his estate and not of the partnership. Various creditors of the partnership intervened in the proceedings but the question before the chancellor was whether the proceeds from the insurance on the life of Marvin Edmonds were assets of the partnership subject to the payment of debts of the partnership, or were assets belonging to the estate of Marvin Edmonds.

The chancellor found and decreed that the insurance policy on the life of Marvin Edmonds was obtained and continued in force for the benefit of D & M Construction Co., and that the proceeds from the insurance were partnership assets impressed by a constructive trust for the benefit of the creditors of the partnership, D & M Construction Co. A receiver was appointed for the D & M Construction Co. and Mrs. Edmonds as administratrix was ordered to pay the proceeds from the life insurance to the receiver.

On appeal to this court Mrs. Edmonds relies on the following points:

"The Court erred in finding the insurance was maintained after payment of the loan for a partnership purpose.

The lower Court erred in finding the loan to be a partnership loan and the policy a partnership asset.

That the Court erred in establishing a constructive trust for all partnership creditors."

The question before us on this appeal is whether the chancellor's decree was supported by clear and convincing evidence and we conclude that it was.

Aside from the testimony of Leonard Edmonds as to any transactions he had with Marvin within the prohibition of Schedule 2 of the State Constitution, the record is clear that the loan from the Arkansas Savings & Loan Association was obtained for the purpose of purchasing a lot and building a dwelling house thereon for sale by D & M Construction Co. The record is also clear that the insurance on the life of Marvin Edmonds for the full amount of such loan was obtained for the additional protection of the lending agency in the repayment of the loan. The initial premium for the insurance was paid out of the proceeds of the loan, and the interest on the loan was paid by D & M Construction Co.

Mr. Jack Basham, president of Arkansas Savings & Loan Association, testified that his company disbursed the amount of the original loan for material and labor in construction of the house involved and he testified that when the loan was paid off, he recommended that the insurance be retained and kept in force for the benefit of Mrs. Edmonds and the children and to cover future construction loans. He testified that he had talked with both Leonard and Marvin on numerous occasions in regard to their construction business; that a loan card was kept in his files for D & M Construction Co.; that several loans were made prior to April, 1969, and that money was disbursed to D & M Construction Co. It is clear from his testimony, and that of Otis N. Stewart, a public accountant, that after a contract was entered into for the sale of the property and approximately nine days before the transaction was closed and the loan paid, an annual renewal premium on the insurance policy was added to the principal of the loan and that after the

entire loan was paid out of the proceeds from the sale of the property, the balance of the sale price in the amount of $4,662.21 was deposited to the bank account of D & M Construction Co.

The record is clear from the exhibits and from the testimony of the public accountant, Otis N. Stewart, Jr., that both partners withdrew funds from the D & M Construction Co. bank account as needed for their personal use and that the funds so withdrawn were charged to their draw account and balanced out in periodic settlements between them. The record is clear also that the premiums paid on the life insurance here involved were never charged to the draws made by Marvin, but it was stipulated that their accountant, Mr. Otis N. Stewart, Jr., would testify on recall, that premiums for life insurance on the sons of Marvin Edmonds were paid from the D & M Construction Co. account, and that these premium payments were charged to Marvin's drawing account with D & M Construction Co.

Mrs. Edmond's offered no evidence at all and we conclude that the chancellor's decree is not against the preponderance of the evidence, but is supported by evidence that is clear and convincing.

The decree is affirmed.